**LeChann DAVIS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–1103–CR–184.

Court of Appeals of Indiana.

Oct. 13, 2011.

Zachary T. Rosenbarger, Wuertz Law Office, LLC, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant LeChann Davis appeals her conviction for Class C felony Child Molesting.[1] Specifically, Davis contends that the trial court abused its discretion in admitting certain testimony at trial and that the evidence is insufficient to support her conviction. We affirm.

### FACTS AND PROCEDURAL HISTORY

Paul and Cherieka Spells (collectively, "the Spellses"), along with their four children, including E.S., lived in Davis's home for a few months during 2009, after losing their home as a result of financial hardship. Cherieka loved, trusted, and respected Davis, and Davis acted like an aunt to the Spellses' children. While living in Davis's home, the Spellses and their children occupied an upstairs bedroom, and the children frequently watched television from the downstairs living room with Davis. While watching television with the children, Davis often treated six-year-old E.S. differently than his younger siblings. For instance, Davis would have E.S. sit with her on a couch or in a chair, and would touch his bottom, back, and legs. E.S. did not like being touched by Davis and considered her touches to be "bad" touches.[2]

On one occasion while the children were watching television in the living room with Davis and the Spellses were upstairs in the bedroom, Davis kissed E.S. on his mouth. Davis's mouth was open when she kissed E.S., and E.S. felt Davis's teeth and tongue in his mouth. During this kiss, which E.S. described as lasting a long

---

1. Ind.Code § 35–42–4–3(b) (2009).

2. E.S. indicated that he considered Davis's touches to be "bad" touches because she "touched [him] in the wrong way." Tr. p. 108.

time, E.S. could not breathe and felt as though Davis "sucked [his] breath in." Tr. p. 112. Davis kissed E.S. a total of two times and later admitted that she felt "aroused in her flesh" by E.S. Tr. p. 150. E.S. felt mad and scared and pulled away from Davis.

A few weeks later, Davis approached the Spellses and told them that she needed to "confess" something to them. Tr. p. 148. Davis told the Spellses that E.S. "has a strong lust spirit" that she had kissed E.S. twice. Tr. p. 149. Davis told the Spellses that E.S.'s spirit "was so strong she couldn't resist him." Tr. p. 149. Davis additionally told the Spellses that "she became aroused by him" and that "she realized that she didn't need to be around him or any other child." Tr. p. 150.

After hearing that Davis had kissed E.S., Cherieka was "in shock." Tr. p. 150. The Spellses immediately took their children and went to Cherieka's mother's home where they talked alone with E.S. Without telling E.S. what Davis had told them, Cherieka asked E.S. whether anyone had "ever done anything that he felt . . . was a bad touch." Tr. p. 153. E.S. said yes and began to cry before telling his parents that Davis had "laid him down and . . . started kissing him, sticking her tongue in his mouth and biting his lip." Tr. p. 153. E.S. also told his parents that Davis had "pinch[ed] his butt." Tr. p. 153. The Spellses subsequently reported Davis's actions to the pastor at the church where Davis ran a daycare. Cherieka also placed an anonymous call to child protective services "to get information to see how [she] should" proceed and notified the police. Tr. p. 157.

On October 2, 2009, the State charged Davis with Class C felony child molesting, Class C felony criminal confinement, and Class D felony battery. Following a hearing on November 5, 2010, the trial court

determined that E.S.'s statement to his mother that Davis "pinched his butt" was admissible under the protected person statute. The trial court conducted a bench trial on November 10, 2010, at the conclusion of which the trial court found Davis guilty of Class C felony child molesting and not guilty of Class C felony criminal confinement and Class D felony battery. On February 17, 2011, the trial court sentenced Davis to four years of incarceration with three years suspended to probation. This appeal follows.

## DISCUSSION AND DECISION

### I. Admission of Testimony

■■■ Davis contends that the trial court abused its discretion in admitting E.S.'s statement to his mother under the protected person statute.

"[T]he decision to admit or exclude evidence is within a trial court's sound discretion and is afforded great deference on appeal." *Carpenter v. State*, 786 N.E.2d 696, 702 (Ind.2003). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or it misinterprets the law. *Id.* at 703. However, as the court in *Carpenter* emphasized: "At the same time, the protected person statute impinges upon the ordinary evidentiary regime such that we believe a trial court's responsibilities thereunder carry with them what we recently called in another context 'a special level of judicial responsibility.'" *Id.* (quoting *Cox v. State*, 706 N.E.2d 547, 551 (Ind.1997[1999] )).

*Taylor v. State*, 841 N.E.2d 631, 634 (Ind. Ct.App.2006), *trans. denied.*

The Protected Person Statute (PPS), Indiana Code section 35–37–4–6 (2009), allows for the admission of otherwise inadmissible hearsay evidence relating to spec-

ified crimes, including sex crimes, whose victims are deemed "protected persons." *Tyler v. State*, 903 N.E.2d 463, 465 (Ind. 2009).

> [The PPS] provides, in relevant part, that an otherwise inadmissible statement or videotape made by a protected person (a child under fourteen years of age or a mentally disabled individual) is admissible in criminal actions involving sex crimes defined in Indiana Code chapter 35–42–4 if the following conditions are met:
>
> (1) the court must find in a hearing attended by the protected person and outside the presence of the jury, that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability;
>
> (2) the protected person must either testify at the trial or be found unavailable as a witness;
>
> (3) if the protected person is found to be unavailable as a witness, the protected person must be available for cross-examination at the hearing or when the statement or videotape is made; and
>
> (4) the defendant must be notified at least ten days before trial the prosecuting attorney's intention to introduce the statement or videotape and the contents of the statement or videotape.

*Taylor*, 841 N.E.2d at 634–35 (citing Indiana Code § 35–37–4–6(a) through (g)). It is undisputed that the PPS applies in the instant matter because child molesting is an enumerated crime under the statute, and E.S., who was six years old when the molestation occurred, is deemed to be a "protected person." Ind.Code § 35–37–4–6(a)(1) & (c)(1).

The PPS is generally described as an effort to spare children the trauma of testifying in open court against an alleged sexual predator. *See Tyler*, 903 N.E.2d at 466 (citing *Miller v. State*, 517 N.E.2d 64, 69–70 & n. 4 (Ind.1987)).

> " 'Considerations in making the reliability determination under [Indiana Code section 35–37–4–6] include the time and circumstances of the statement, whether there was significant opportunity for coaching, the nature of the questioning, whether there was a motive to fabricate, use of age appropriate terminology, and spontaneity and repetition.' " *M.T. v. State*, 787 N.E.2d 509, 512 (Ind.Ct.App. 2003) (quoting *Pierce v. State*, 677 N.E.2d 39, 44 (Ind.1997) (citing *Idaho v. Wright*, 497 U.S. 805, 821–22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)) (alteration in original)). Doubt may be cast on the reliability of the statement or videotape if it is preceded by lengthy or stressful interviews or examinations. *Id.*

*Taylor*, 841 N.E.2d at 635.

In challenging the trial court's decision to allow E.S.'s mother to testify that E.S. told her that, in addition to the tongue kisses, Davis "pinched his butt," Davis argues that the statement was not admissible under the PPS. However, even assuming that it was an abuse of discretion for the trial court to admit E.S.'s out-of-court statement to his mother that Davis "pinched" his bottom, we conclude that any such abuse of discretion would be, at most, harmless. During Davis's bench trial, E.S. testified that Davis kissed him with an open mouth, put her tongue in his mouth, and "sucked [his] breath in." Tr. p. 112. In addition, E.S.'s mother testified that Davis told her that E.S. "had a strong lust spirit," that she kissed him twice, and that "she became aroused in her flesh by him." Tr. pp. 149–50. At the conclusion of Davis's bench trial, the trial court found that Davis had committed Class C felony child molestation by twice kissing E.S. and inserting her tongue in his mouth. The

trial court concluded that Davis's statement to E.S.'s mother regarding the incident to be an "incriminating statement." Tr. p. 218. Nothing in the record indicates that the trial court considered, much less relied on, E.S.'s statement that Davis "touched" or "pinched" his bottom in finding Davis guilty. Accordingly, any abuse of discretion that may have arisen from the trial court's decision to allow E.S.'s mother's testimony that E.S. told her that Davis pinched his bottom during Davis's bench trial was harmless.

## II. Sufficiency of the Evidence

■ Davis also contends that the evidence presented at trial was insufficient to support her Class C felony child molesting conviction. Specifically, Davis claims that the evidence was insufficient to prove the intent element of child molesting.

The standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or assess the credibility of the witnesses. Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable [factfinder] could have found the defendant guilty beyond a reasonable doubt.

*Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

■ In order to convict Davis of Class C felony child molesting, the State was required to prove that Davis (1) performed or submitted to any fondling or touching; (2) with a child under the age of fourteen; (3) with the intent to arouse or to satisfy the sexual desires of either the child or herself. Ind.Code § 35–42–4–3. Mere touching alone is not sufficient to constitute the crime of child molesting. *Nuerge v. State*, 677 N.E.2d 1043, 1048 (Ind.Ct.App.1997), *trans. denied.* The State must also prove beyond a reasonable doubt that the act of touching was accompanied by the specific intent to arouse or satisfy sexual desires. *Id.* The intent element of child molesting may be established by circumstantial evidence and may be inferred " 'from the actor's conduct and the natural and usual sequence to which such conduct usually points.' " *Id.* (quoting *Pedrick v. State*, 593 N.E.2d 1213, 1220 (Ind.Ct.App.1992)).

Here, the facts most favorable to the judgment show that Davis kissed E.S., whom she knew to be six years old, on the lips twice. Davis admitted and E.S. testified that Davis used her tongue in kissing E.S. In addition, Davis "confessed" to E.S.'s parents that she kissed E.S. twice and that she became "aroused in her flesh" by E.S. Tr. p. 148, 150. We conclude that the trial court reasonably inferred from Davis's conduct, her statement that she became "aroused in her flesh" by said conduct, and the natural and usual sequence associated with "tongue kissing" that Davis intended to arouse or satisfy sexual desires.[3] *See Nuerge*, 677 N.E.2d at 1048. Accordingly, we affirm the judgment of the trial court.

---

**3.** Our conclusion that the trial court could reasonably infer intent to arouse or satisfy sexual desires is consistent with the opinions of our sister jurisdictions that have previously considered this question. *See People v. Calusinski*, 314 Ill.App.3d 955, 247 Ill.Dec. 956, 733 N.E.2d 420, 426 (2000) (providing that an open mouth tongue or "French" kiss is an inherently sexual act which generally results in sexual excitement and arousal, and, as such, one could reasonably infer that the defendant intentionally placed his tongue in the victim's mouth for purposes of his own sexual arousal); *Cornelius v. State*, 213 Ga.App. 766, 445 S.E.2d 800, 804 (1994) (providing that the evidence that defendant "French" kissed the eleven-year-old victim was sufficient to authorize the jury's finding that the defendant was guilty of child molestation with the intent to arouse his sexual desires).

The judgment of the trial court is affirmed.

ROBB, C.J., and BARNES, J., concur.