**FOR PUBLICATION**



FILED

Jan 30 2014, 7:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRANDON E. MURPHY**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE MATTER OF | ) | |
| | ) | |
| C.L., a Delinquent, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  05A04-1306-JV-319 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

**APPEAL FROM THE BLACKFORD CIRCUIT COURT**
The Honorable Dean A. Young, Judge
Cause No. 05C01-1305-JD-36

**January 30, 2014**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

Appellant-respondent C.L. challenges the juvenile court's finding that he committed Intimidation,[1] a class A misdemeanor, if committed by an adult when he allegedly threatened the victim—his grandfather—about the use of certain loan proceeds once they were obtained. C.L. contends that the delinquency finding must be set aside because his threats did not satisfy the intimidation statute inasmuch as the threats did not place his grandfather in fear of retaliation for a prior lawful act.

We conclude that C.L. should not have been adjudicated a delinquent child for intimidation because it was not established that C.L. committed that offense for a prior lawful act. Rather, the evidence presented at the factfinding hearing established that the alleged threats C.L. directed toward his grandfather, Terry Landis, were aimed at influencing <u>future</u> conduct, rather than in retaliation for past conduct. Thus, we reverse the juvenile court's finding of delinquency.

FACTS

On April 29, 2013, at approximately 1:00 a.m., James Heflin of the Blackford County Sheriff's Office was dispatched to the intersection of CR 400 E and CR 250 N, where he encountered Landis. Landis told Officer Heflin that he was walking along the road because he had just escaped from his residence where his seventeen-year-old grandson, C.L., had been holding him hostage for the past several days. Officer Heflin observed that Landis was "shaking and very nervous and afraid." Appellant's App. p. 7.

---

[1] Ind. Code § 35-45-2-1.

2

Landis explained that he was hoping to obtain a $5000 home loan to repair some damage to the water lines in his house. Landis told C.L. about the project, but C.L. wanted a new car that cost about $1700. Although C.L. demanded $3500 of the home loan funds, Landis told C.L. that he did not have the money to give him to purchase the vehicle. Landis then said, "look . . . if you don't quit doing this, trying to make me do something I don't want to do . . . I'm just going to leave." Id. C.L. responded, "no you ain't leaving. You ain't walking. I'll drag you back up here." Id.

Landis was frightened of C.L. because of his size and strength. Landis stated that he could no longer handle C.L., that he was "big enough [to] do damage," and that C.L. had been "locked up for three years." Tr. p. 12-13. At some point, C.L. became "huffy and puffy," and told Landis that he would "beat the heck out of" Landis if C.L. "didn't get the money" for the car. Id. at 23. C.L. also told Landis that if he "ever got sent to jail and . . . [got] out, [that he would] kill him." Id. C.L. also stated that he would kill others, including his mother and brother.

Although Landis wanted to leave the residence, C.L. did not allow him to do so. Landis attempted to leave the house at least twice over the course of four nights before he was finally able to escape. At some point, Landis managed to leave through the back door while C.L. was sleeping, walked about one-half mile, and called 911.

The State filed a delinquency petition against C.L. on May 6, 2013, alleging that C.L. had committed three counts of intimidation, a class A misdemeanor if committed by

3

an adult and one count of possession of marijuana, a class A misdemeanor if committed by an adult.

At the factfinding hearing that commenced on May 22, 2013, Landis testified on cross examination that the statements C.L. directed at him were always prefaced with "if," such as "if he didn't get the money" or "if he got caught." Tr. p. 23-24 (emphasis added). Landis further testified that he had not yet obtained the loan and had not yet called the police when he alleged that C.L. had made the statements to him.

Following the hearing, the juvenile court dismissed the marijuana charge, and C.L. was adjudicated delinquent of committing one count of intimidation. C.L. now appeals.

## I. Standard of Review

When the State attempts to have a juvenile adjudicated to be delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of that offense beyond a reasonable doubt. Al-Saud v. State, 658 N.E.2d 907, 908 (Ind. 1995). We neither reweigh the evidence nor judge the credibility of the witnesses. Id. We will consider only the evidence most favorable to the judgment and reasonable inferences therefrom. J.B. v. State, 748 N.E.2d 914, 916 (Ind. Ct. App. 2004). We will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. Blanche v. State, 690 N.E.2d 709, 712 (Ind. 1998).

The charging information regarding the intimidation counts alleged that C.L. communicated a threat to Landis with the intent to place Landis in fear of retaliation for a

4

prior lawful act, contrary to Indiana Code section 35-45-2-1. To prove intimidation, the State must establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act. Griffith v. State, 898 N.E.2d 412, 417 (Ind. Ct. App. 2008). If the State does not prove that the defendant threatened the victim in order to place him or her in fear of retaliation for a prior lawful act, the conviction and sentence for intimidation should be vacated. H.J. v. State, 746 N.E.2d 400, 403 (Ind. Ct. App. 2001).

## II. C.L.'s Claims

As discussed above, C.L. contends that the juvenile adjudication must be set aside because the evidence did not show that the statements he made were designed to retaliate against Landis for a prior lawful act. Rather, C.L. maintains that the "allegedly threatening statements in the record [he] made were conditional and aimed at future, rather than past, conduct." Appellant's Br. p. 5-6.

In this case, we cannot say that C.L.'s threats of violence against Landis were designed to retaliate against a prior lawful act of Landis. Rather, it is apparent that each of the alleged threatening statements in the record that C.L. made against Landis were conditional and aimed at future, rather than past, conduct.

By way of analogy, in Ransley v. State, the evidence showed that the defendant and the victim were neighbors engaged in a feud. 850 N.E.2d 443 (Ind. Ct. App. 2006). At some point, the two men began shouting at each other from about thirty feet away on a disputed property line. One of the men had a gun and the other grabbed an axe handle.

5

Id. at 444-45. It was determined that the evidence was insufficient to establish that Ransley intended that the victim be placed in fear of retaliation for a prior lawful act. In other words, because the alleged threat was aimed at future action, it did not comport with the requirements of Indiana Code section 35-45-2-1. Id. at 447 (Darden, J., dissenting). The Ransley court also recognized that anger without proof of intent to retaliate is not enough to satisfy the requirements of the intimidation statute. Id.

Like the circumstances in Ransley, it is apparent that each of C.L.'s statements or threats directed against Landis were conditional and targeted at future conduct. C.L. indicated that "[i]f I ever get sent to jail; if I get caught; if I don't get the money," there would be consequences. Tr. p. 23-24. Similarly, when C.L. stated that he "will drag [Landis] back up" to the house if Landis tried to leave, that threat was also directed at a future act. Tr. p. 12 (emphasis added).

In sum, while C.L.'s threats against his grandfather are condemnable and reprehensible, the statements were not directed at an identifiable prior act. Rather, they each point to a specific future act. And Landis agreed on cross-examination that C.L.'s offending statements were aimed at speculative conduct that had not yet occurred. Id.; see also Casey v. State, 676 N.E.2d 1069 (Ind. Ct. App. 1997) (observing that because the record did not demonstrate the defendant's reasons for threatening the victim or indicate that he was doing so because of any specific prior act, the defendant's conviction for intimidation was reversed) (Robertson, J., dissenting).

6

In conclusion, because the State did not present sufficient evidence to prove that C.L. communicated a threat to Landis with the intent that he be placed in fear of retaliation for a prior lawful act in accordance with the intimidation statute, the juvenile court's delinquency finding must be reversed.

The judgment of the juvenile court is reversed.

CRONE, J., concurs, and NAJAM, J., dissents with an opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: THE MATTER OF         )
)
C.L., a Delinquent,         )
)
    Appellant-Respondent,      )
)
        vs.         )     No. 05A04-1306-JV-319
)
STATE OF INDIANA,         )
)
    Appellee-Petitioner.       )

**NAJAM, Judge, dissenting.**

I respectfully dissent and would vote to affirm the juvenile court's adjudication of C.L. as a delinquent. Our standard of review obliges us to consider only the evidence and the reasonable inferences therefrom that are most favorable to the judgment. J.B. v. State, 748 N.E.2d 914, 916 (Ind. Ct. App. 2001). Here, that evidence demonstrates that Landis had decided to get a home loan for repairs, C.L. subsequently demanded a portion of those loan proceeds, and Landis refused C.L.'s demand. C.L. then confronted Landis,

8

Landis stated that he was going to leave, and C.L. threatened to "drag [Landis] back." Appellant's App. at 7. Landis then said he was going to call the police, and C.L. responded by threatening to kill Landis and other family members. Transcript at 23.

The evidence shows that C.L.'s threats were in direct response to Landis's prior decision to use the loan proceeds only to repair his residence and not to give C.L. a portion of those proceeds. See Ind. Code § 35-45-2-1(a)(2). That is, Landis had already decided not to give C.L. any money from the loan proceeds, whether or not Landis had himself already received those proceeds, and Landis had conveyed that decision to C.L. A reasonable inference from the evidence demonstrates that C.L.'s threats were intended to place Landis in fear of retaliation for his prior lawful act of having decided not to surrender a portion of his home loan proceeds to C.L. See, e.g., Leggs v. State, 966 N.E.2d 204, 206, 208 (Ind. Ct. App. 2012). As such, I would affirm the juvenile court's adjudication of C.L. as a delinquent.