## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2019, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Patrick M. Schrems
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| G.W., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 30, 2019 <br><br> Court of Appeals Case No. 19A-JV-1254 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Stephen R. Galvin, Judge <br><br> Trial Court Cause No. 53C07-1810-JD-793 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, G.W. (G.W.), appeals his adjudication that would constitute public nudity, a Class C misdemeanor, Ind. Code § 35-45-4-1.5(b), if committed by an adult.

We affirm.

## ISSUES

G.W. presents two issues on appeal, which we restate as follows:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to sustain his adjudication as a delinquent child; and

(2) Whether the juvenile court abused its discretion by ordering G.W. to serve nine months of probation.

## FACTS AND PROCEDURAL HISTORY

On September 7, 2018, fifteen-year-old G.W. was in in his art class with several other students, at Bloomington High School South in Bloomington, Indiana. P.H., a female student, was seated next to G.W. G.W. began flirting with P.H. and he asked P.H. what perfume she was wearing. After asking the question, and while sitting down in his chair, G.W. "pulled his pants down" and exposed "the shaft of his penis." (Transcript pp. 12-13). G.W. apologized to P.H. for his "pubes being unshaven." (Tr. p. 13). Upset by G.W.'s behavior, P.H. got up from her seat, exited the class, and reported the incident to the social worker at her school. The social worker thereafter contacted the police.

On October 26, 2018, the State filed a Petition Alleging Delinquency, claiming that G.W. had committed Class C misdemeanor public nudity, if committed by an adult. The juvenile court conducted a fact-finding hearing on February 20, 2019. At the close of the evidence, the juvenile court adjudicated G.W. as a delinquent child. At a dispositional hearing on May 2, 2019, the juvenile court ordered G.W. to be placed on nine months of probation and to participate in various court-ordered services.

G.W. now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Sufficiency of the Evidence*

When the State seeks to have a juvenile adjudicated a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of the offense beyond a reasonable doubt. *C.L. v. State*, 2 N.E.3d 798, 800 (Ind. Ct. App. 2014). When reviewing the sufficiency of the evidence supporting a juvenile adjudication on appeal, we neither reweigh the evidence nor judge the credibility of the witnesses. *Z.A. v. State*, 13 N.E.3d 438, 439 (Ind. Ct. App. 2014). We consider only the evidence most favorable to the judgment and the reasonable inferences therefrom, and we will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *C.L.*, 2 N.E.3d at 800.

To make a true finding of delinquency against G.W. for Class C misdemeanor public nudity, the State was required to prove beyond a reasonable doubt that

G.W. knowingly or intentionally appeared in a public place in a state of nudity. Nudity is statutorily interpreted as "the showing of the human male . . .genital, pubic area, or buttocks with less than a fully opaque covering, . . . or the showing of covered male genitals in a discernibly turgid state." I.C. § 35-45-4-1(d).

[9] On appeal, G.W. casts doubt as to whether P.H. saw his penis. At the fact-finding hearing, P.H. testified that G.W. pulled down his sweatpants and exposed the "shaft of his penis." (Tr. p. 13). G.W. then apologized to P.H. for his "pubes being unshaven." (Tr. p. 13). G.W.'s request for us to disregard P.H.'s testimony is nothing more than a request for this court to reweigh the evidence which we shall not do. Therefore, we conclude that the State presented sufficient evidence beyond a reasonable doubt to support G.W.'s adjudication.

## II. Disposition

[10] G.W. contends that the juvenile court abused its discretion when it ordered him to serve nine months of probation.

[11] "A juvenile court is accorded 'wide latitude' and 'great flexibility' in its dealings with juveniles." *J.T. v. State*, 111 N.E.3d 1019, 1026 (Ind. Ct. App. 2018) (citing *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008)). The choice of a specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion. *Id.* "The juvenile court's discretion

in determining a disposition is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least-harsh disposition." *Id.* An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Id.*

[12] At the disposition hearing, Mary Ellis (Ellis), the probation officer assigned to G.W., recommended that G.W. should be placed on nine months of probation and compete the following services: mental health evaluation and follow any recommendations; participate in therapy at Centerstone; "[c]ontinue homebound schooling" and engage in "pro-social activity." (Tr. p. 48). When asked what pro-social activity entailed, Ellis stated that G.W. would be required to either "obtain a job or join a club or a team." (Tr. p. 49). G.W. agreed with the recommendations offered by Ellis but requested a shorter probation of six months considering he was already participating in some of the services recommended by Ellis. (Tr. p. 59).

[13] On appeal, G.W. argues that he "had already engaged in several of the services required before the dispositional hearing occurred." (Appellant's Br. p. 10). Without further detailed explanations, G.W. additionally states that the "curfew restrictions on fulfilling some of the pro-social" activity "could be a hinderance." (Appellant's Br. p. 10). G.W. also argues that he "did not pose a threat to the community, and the conditions placed on [him] could potentially disrupt his family life and autonomy. . ." (Appellant's Br. p. 10). Therefore,

G.W. posits that the "nine months of probation versus six months of probation seem excessive and unreasonable." (Appellant's Br. p. 10).

[14] The dispositional order shows that the juvenile court considered the "Preliminary Inquiry/Predisposition Report" and the "the Risk Assessment" report (collectively, Reports) prepared by the probation department. (Appellant's App. Vol. II, p. 22). The Reports showed that G.W. has a history of juvenile delinquency preceding his public nudity charge. Specifically, G.W.'s history of juvenile delinquency includes public intoxication, driving while suspended (multiple), disorderly conduct and public intoxication, failure to have proper registration, conversion, battery, battery resulting in bodily injury, and operating while intoxicated. The Reports indicated that G.W. was unemployed, and his social activities included playing "video games, bike-riding with friends, and meeting his friends at Laser Tag." (Appellant's App. Vol. II, p. 88). While G.W. admitted to drinking alcohol once, he indicated that he smokes "marijuana" once "every other week" since the "pot makes" him feel "productive and happy." (Appellant's App. Vol. II, p. 13). G.W. additionally reported that he has "overdosed on Xanax twice" and "huffed butane once." (Appellant's App. Vol. II, p. 13). G.W.'s "overall risk assessment score" put him in the "**MODERATE/HIGH** risk category to reoffend." (Appellant's App. Vol. II, p. 13) (bold in original).

[15] In the dispositional order, the juvenile court stated that it considered the Reports, the recommendations from the probation department, and the

testimony offered at the dispositional hearing. The juvenile court consequently entered the following findings:

> 2. [G.W.] requires appropriate services to address his delinquent behavior. These services are set forth in the order, below. The services are designed to meet [G.W.] specific needs.

> 3. The following disposition is consistent with the safety and the best interest of the child. It places [G.W.] in the least restrictive setting, least interferes with family's autonomy, is least disruptive of family life, imposes the least restraint on the freedom of the [G.W.] and [G.W.'s] parent, guardian, or custodian; and provides a reasonable opportunity for participation by [G.W.'s] parent, guardian, or custodian.

(Appellant's App. Vol. II, p. 22). Ordering G.W. to complete nine months of probation, the juvenile court also ordered G.W. to: complete a mental health evaluation; continue ongoing therapy at Centerstone; continue ongoing schooling through Homebound; and engage in a "pro social activity." (Appellant's App. Vol. II, p. 23).

[16] Based on the foregoing, the juvenile court considered all the evidence presented and rejected G.W.'s request for a short probation of six months, finding that the nine months of probation and the additional court-ordered services will enable G.W. to get therapy, treatment, and education he needs to rehabilitate himself. The juvenile court's findings and disposition were not unreasonable in light of the evidence presented and we affirm its decision to sentence G.W. to serve nine months of probation and participate in various services.

# CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence beyond a reasonable doubt to support G.W.'s adjudication. Also, we conclude that the juvenile court did not abuse its discretion in ordering G.W. to serve nine months of probation and participate in various services.

Affirmed.

Vaidik, C. J. and Bradford, J. concur